IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** *et al.*, *ex rel.* **MATTHEW A. FITZER, M.D.,** | * * * * | |
| **Plaintiffs,** | * | **UNDER SEAL** |
| v. | * * | **Civil Case No. 1:17-cv-00668-SAG** |
| **ALLERGAN, INC.,** *et al.* | * * | |
| **Defendants.** | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Relator Matthew A. Fitzer ("Relator") filed this case against Defendant Allergan, Inc. ("Allergan"), alleging that Allergan conducted an unlawful kickback scheme in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*., by maintaining a surgeon locator on the website for its LAP-BAND product. ECF 1. Several motions remain pending before this Court, including motions to exclude expert testimony. This opinion adjudicates all remaining such motions: Allergan's Motion to Exclude Allison K. Hoffman, ECF 205, and Relator's *Daubert* Motion to Exclude / Strike Expert Testimony with respect to Katherine Norris and Benjamin Scher, ECF 197. The Court has considered the motions, their oppositions, and the replies, ECF 198, ECF 230, 232, 251, 259, and heard argument on the motions on April 5, 2024, ECF 328. For the reasons that follow, Allergan's motion is GRANTED and Relator's motion to exclude as to Norris and Scher is GRANTED IN PART and DENIED IN PART.[1]

---

[1] The parties will have one week to review this memorandum opinion, confer, and jointly suggest redactions that should be made before this opinion is publicly filed.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

This Court's memorandum opinion on the applicability of the public disclosure bar, ECF 344, summarizes the undisputed facts in this case. In short, from 2006 to at least 2013, Allergan developed and marketed pharmaceuticals and medical devices, including an adjustable gastric banding device known as the LAP-BAND. Allergan used the website Lapband.com to provide potential patients information about the LAP-BAND and implant procedure. The website included a "Surgeon Locator" feature, which allowed potential patients to enter a zip code to see a list of experienced LAP-BAND surgeons in their area. Relator, a bariatric surgeon himself who appeared on the Locator beginning in 2007, alleges that Allergan conditioned referrals using the Locator in exchange for more LAP-BAND procedures in violation of the Anti-Kickback Statute ("AKS"), which prohibits the giving or receiving of remuneration in exchange for referrals under federal health care programs. 42 U.S.C. § 1320a-7b.

Both parties retained several experts in this case, and the Court has adjudicated in whole or part several of the parties' motions to exclude various expert opinions. *See* ECF 298 (Order as to Christopher L. Haney); ECF 317 (Order as to Dr. Ian Larkin, Vernon Vincent, Dr. Thomas A. Gustafson, and Dr. W. David Bradford). The motions to exclude the opinions of Allison K. Hoffman, Katherine Norris, and Benjamin Scher remain.

II.  **LEGAL STANDARDS**

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. A qualified expert may give testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702. In essence, the trial court must ensure the proposed expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In *Daubert*, the Supreme Court provides five non-exhaustive factors a court may weigh in making this assessment: (1) "whether a theory or technique . . . can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) "the known or potential rate of error," (4) "the existence and maintenance of standards controlling the technique's operation," and (5) whether the technique or theory has gained "general acceptance." *Id.* at 593–94; *Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448, 452 (4th Cir. 2010). However, ultimately, the inquiry is "a flexible one" and relevant factors can vary with the needs of each case. *Daubert*, 509 U.S. at 594.

For the proffered evidence to be sufficiently reliable it "must be derived using scientific or other valid methods" and not based on mere "belief or speculation." *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 340 (D. Md. 2011) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). The court's analysis focuses on experts' methods, not their conclusions, but an expert opinion that relies on "assumptions which are speculative and are not supported by the record," is inadmissible. *Tyger Const. Co. v. Pensacola Const. Co.*, 29 F.3d 137, 142 (4th Cir. 1994); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). For the proffered opinion to be relevant, it "must be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Casey*, 823 F. Supp. 2d at 341 (quoting *Daubert*, 509 U.S. at 591). Expert testimony "is presumed to be helpful unless it concerns

3

matters within the everyday knowledge and experience of a lay juror." *Anderson v. Home Depot U.S.A., Inc.*, Civ. No. GJH-14-2615, 2017 WL 2189508, at *4 (D. Md. May 16, 2017) (quoting *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993)).

The proponent of the expert testimony bears the burden of establishing admissibility, or "coming forward with evidence from which the trial court could determine that the evidence is admissible under *Daubert*." *Id.* at *3 (quoting *Main St. Am. Grp. v. Sears, Roebuck, & Co.*, Civ. No. JFM-08-3292, 2010 WL 956178, at *3 (D. Md. Mar. 11, 2010)); *see also Casey*, 823 F. Supp. 2d at 340; *Daubert*, 509 U.S. at 592 n.10 (explaining admissibility must be established by a "preponderance of proof").

In determining the admissibility of expert testimony, the court considers two "guiding, and sometimes competing, principles." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). On the one hand, Rule 702 was "intended to liberalize the introduction of relevant expert evidence," and the court need not ensure the expert's proposed testimony is "irrefutable or certainly correct." *Id.* (explaining that admissible expert testimony can still be vigorously tested before the jury by "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" (quoting *Daubert*, 509 U.S. at 596)). On the other hand, "due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" *Id.* (quoting *Daubert*, 509 U.S. at 595). The court must determine whether the disputed expert testimony "has a greater potential to mislead than to enlighten." *Id.* If so, the testimony should be excluded. *Id.*; *see also Casey*, 823 F. Supp. 2d at 341 (noting such testimony would be barred by Federal Rule of Evidence 403).

### III. ANALYSIS

Allergan has moved to exclude the opinions and testimony of Allison K. Hoffman, and Relator has moved to exclude the testimony of Benjamin Scher and Katherine Norris. The Court addresses the admissibility of each witness's testimony in turn.

### A. Allergan's Motion to Exclude Allison K. Hoffman

Allison K. Hoffman is a professor of health care law and policy at the University of Pennsylvania. ECF 205-2 at 4–5. Relator intends to use Hoffman to show that Allergan's operation of the Locator on Lapband.com fell short of relevant health care compliance standards and to rebut the opinions of Allergan's own compliance expert, Katherine Norris. *See id.* at 3–4; ECF 205-3 at 3–4. As a threshold matter, Allergan contends that Hoffman lacks the requisite knowledge, skill, experience, training, or education to opine specifically on the AKS and corporate fraud and abuse matters. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989) ("[O]nly experts qualified by 'knowledge, skill, experience, training, or education' may submit an opinion." (quoting FED. R. EVID. 702)). Hoffman has worked in the health care field for the entirety of her career, which began in 1998 as a consultant at the Boston Consulting Group. ECF 205-2 at 5. She then worked as an associate attorney at Ropes & Gray, LLP ("Ropes") from 2004 to 2007. *Id.* at 40–41. After leaving legal practice, she began teaching health care law and policy and now teaches an introductory health law and policy course at the University of Pennsylvania. *Id.* at 5. Her teachings include federal and state health care programs, along with "the history and structure of the AKS, and compliance with the AKS." *Id.* She has also co-edited and co-authored publications on health care financing and policy, continues to consult on health policy and regulatory issues, and has been retained as an expert in three FCA cases involving violations of the AKS. *Id.* at 5–6.

5

It is undisputed Hoffman has general experience and expertise in health care law and compliance, but that broad expertise does not automatically extend to all subtopics such as corporate fraud and abuse compliance programs. *See Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area does not *ipso facto* qualify him to testify as an expert in all related areas."); *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 323 (D. Md. 2017) (finding that a proposed expert's general experience in the marketing of toys did not qualify him to specifically testify about the marketing of an air launcher). Hoffman's relevant experience as to compliance-specific issues derive from her few years working at Ropes more than fifteen years ago, where she, in the role of a junior associate, "advised clients on matters including compliance with the AKS," ECF 205-2 at 6, but spent "maybe a quarter of [her] time" doing so, ECF 205-4 at 29:16–18 (Dep. Tr. of Allison K. Hoffman). Notably, Hoffman could not recall if any active FCA cases she worked on involved AKS theories; if she counseled clients regarding fraud or abuse compliance programs; or if her regulatory work with medical device manufacturers involved the AKS, evidencing that she did not rely on her law firm experience to form her opinions in this case. *Id.* at 30:9–12, 33:1–6, 33:24–34:3. But even assuming that the issues on which Hoffman advised while at Ropes shows she has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case," Hoffman has not identified any similar AKS or compliance-related experience since then. *Belk Inc., v. Meyer Corp.*, *U.S.*, 679 F.3d 146, 162 (4th Cir. 2012) (citation omitted). In fact, Hoffman admitted that since her time at Ropes, she has not reviewed any compliance policies or procedures of a device company (other than those of Allergan in connection with this case) and only looks at compliance policies of other health care entities "from time to time as just part of general[] reading in the field." ECF 205-4 at 90:2–13 (Dep. Tr. of Allison K. Hoffman). Additionally, her recent

6

expert engagements on FCA- and AKS-related cases involved long-term care facilities, which clearly fall within the ambit of her expertise, as evidenced by her prior research and publications. *See* ECF 205-2 at 37–39. Corporate fraud and related compliance issues, however, do not. *Compare* ECF 205-4 at 42:5–19, 44:21–25, 47:6–11, 58:12–18 (Dep. Tr. of Allison K. Hoffman) (explaining that she "edited [a] chapter on fraud and abuse" but acknowledging that the AKS is "not the central focus" of her publications; that she did not research or write on fraud and abuse compliance programs; and, as a professor, she does not teach students "the details" of these programs), *with id.* at 77:15–18 (affirming that long-term care is an area that she has focused on from a research and publication standpoint); *see also Thomas J. Kline, Inc.*, 878 F.2d at 800 ("[I]t would be absurd to conclude that one can become an expert simply by accumulating experience in testifying."). Because Hoffman lacks meaningful or recent experience related to corporate fraud compliance matters, the Court finds that she lacks the requisite knowledge, skill, experience, training, or education to opine about Allergan's anti-fraud compliance practices and how it managed AKS risks involving the operation of its LAP-BAND Locator. *See Brasko v. First Nat'l Bank of Pa.*, -- F. Supp. 3d --, 2023 WL 7191120, at *5 (D. Md. Nov. 1, 2023) (finding that an experienced banking auditor lacked the requisite qualifications to opine on residential lending practices when he "neither audited a bank's residential lending practices nor evaluated the conduct of a residential lending officer in more than 20 years," and has "never implemented monitored, or audited [a residential lending] compliance program").

Even if Hoffman were qualified, her sweeping opinions about Allergan's compliance program lack a reliable methodology. To reach her conclusions, Hoffman principally relied on (1) her "general expertise"; (2) guidance documents and advisory opinions from the Department of Health and Human Services, Office of Inspector General ("OIG"); and (3) a relatively small subset

of documents and correspondence between Allergan officials, which, she alleged, failed to show "vigorous compliance awareness and monitoring in line with the OIG best practices." ECF 205-2 at 17; *see* ECF 205-4 at 104:1–2, 126:15–23 (Dep. Tr. of Allison K. Hoffman).[2] Although Hoffman requested from Relator's counsel "any communications relevant to the surgeon locator," ECF 205-4 at 123:15–18 (Dep. Tr. of Allison K. Hoffman), she acknowledged that she was unsure if she received "the entire universe" of such documents, *id.* at 125:17–18, 125:24–126:3. But Hoffman's opinions universally characterize Allergan as "deficient" in its compliance practices over the Locator and having fallen "far short on all . . . dimensions" of her expectations for "a sophisticated company operating in a high-risk environment." ECF 205-2 at 4, 34. In the Court's view, a relatively small subset of emails and communications do not create a reliable foundation for such broad conclusions, particularly when Hoffman already has limited and outdated expertise regarding corporate fraud and compliance matters.

Furthermore, to the extent Relator planned to use Hoffman to opine on AKS standards generally, such opinions would not "be sufficiently tied to the facts of the case" and therefore, would be unhelpful for the jury. *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 340 (D. Md. 2011); *see* FED. R. EVID. 702. And, although qualified experts may provide historical background regarding a statutory or regulatory scheme, the bulk of Hoffman's

---

[2] To reach the conclusions in her initial report, dated June 16, 2023, Hoffman appeared to review approximately 130 documents that Allergan produced. *See* ECF 205-2 at 50–54. Hoffman then supplemented her expert report on October 6, 2023, after reviewing additional documents the parties produced since June 16, 2023. ECF 191-15 at 3. These additional materials, however, consisted of Allergan's compliance documents, Katherine Norris's expert report, and documents cited in Norris's report. *See* ECF 205-4 at 92:4–6, 95:10–15, 122:12–21 (Dep. Tr. of Allison K. Hoffman). As such, they did not rectify the fundamental issue of relying on a limited set of communications to extrapolate broad conclusions about a company's compliance program and employee adherence thereto.

opinions about the AKS are impermissible legal conclusions. *See Nat'l Fair Housing Alliance v. Bank of Am., N.A.*, Civ. No. SAG-18-1919, 2023 WL 1816902, at *5–*6 (D. Md. Feb. 8, 2023). She opines, for example, about Congress's intent in passing the AKS, that free inclusion on a physician locator service could be unlawful remuneration under the statute, and that the AKS's "harsh penalties" evidence the government's "strong interest in preventing kickbacks." ECF 205-2 at 7–10. "[I]t does not help the jury for an expert to give testimony that 'states a legal standard or draws a legal conclusion by applying law to the facts.'" *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (quoting *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)). Hoffman's opinions will therefore be excluded in their entirety.

**B. Relator's Motion to Exclude Katherine Norris**

Katherine Norris, an ethics and compliance advisor, rebuts Hoffman's opinions and opines that Allergan's compliance program and operation of its Locator (including its criteria for inclusion) comported with government guidance and industry standards. ECF 198-3 at 9–11. Relator argues that Norris is unqualified to opine about the Locator criteria because she is not a physician, and her analysis about the Locator lacks appropriate foundation. ECF 198 at 19–22.

Norris has more than twenty years of experience in corporate governance, compliance, and risk management. ECF 198-3 at 4. As a compliance monitor and external advisor, she has audited, managed, and overseen compliance programs, including those involving medical device promotional and educational activities orchestrated by medical device manufacturers. *Id.* Norris has also led ethics and compliance advisory and investigation matters involving hospitals, health care professionals, medical practices, and laboratories. *Id.* at 12. Her methodology is informed, in part, by her familiarity with third-party review requirements in the medical device industry and with sales practices involving equipment for bariatric patients and implantable devices. *Id.* at 11–

13. Although she is not a medical doctor, she is more than qualified to opine on the compliance risks of certain criteria Allergan used to include surgeons on the Locator.

Norris may also testify about other surgeon locators during the relevant period and how those locators functioned relative to Allergan's. Norris conducted a benchmarking analysis of five other surgeon locators operated by medical device companies in a manner consistent with her practice as a compliance advisor. *Id.* at 63. She also referenced a formal code of ethics adopted by the Advanced Medical Technology Association in determining whether certain aspects of each surgeon locator tool complied with relevant industry practices and guidance. *Id.* at 63–64. While it is true that Norris primarily relied on publicly available information on web archives without the benefit of "the entirety of surgeon locator tools and features that may have existed," *id.* at 64, this Court cannot say that her benchmarking analysis is inherently unreliable, *see Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) ("[Q]uestions regarding the factual underpinnings of the expert witness's opinion affect the weight and credibility of the witness's assessment, not its admissibility." (internal quotation marks and citation omitted)); *see also Mr. Dee's Inc. v. Inmar, Inc.*, Civ. No. 1:19-cv-141, 2021 WL 4224720, at *17 (M.D.N.C. Sept. 16, 2021) ("[A]rguments regarding the comparability or appropriateness of a particular benchmark go to the weight, not the admissibility of a benchmarking analysis." (internal quotation marks and citation omitted)).

Relator's reliance on *In re Wholesale Grocery Products Antitrust Litigation* is unavailing. 946 F.3d 995 (8th Cir. 2019). There, the Eighth Circuit upheld the district court's exclusion of a benchmark analysis, which compared wholesale grocery prices between the largest retail grocery chain in the region to small, independent grocers to demonstrate an antitrust injury. *See id.* at 1002–03. That benchmark analysis was unreliable because it was premised on an "unfounded assumption" that prices incurred by independent retailers followed the same pattern as those

incurred by the largest retail grocer, and the expert failed to incorporate "all aspects of the relevant markets to demonstrate the veracity of the benchmark chosen." *Id.* at 999, 1002. Essentially, the expert testimony was "an apples and oranges comparison," and was appropriately excluded. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (citation omitted). Here, however, Norris benchmarked Allergan's Locator against other surgeon locators from five medical device and technology companies and selected those companies "based on [her] knowledge of the surgical medical device industry generally and [her] familiarity with companies that have been subject to enforcement decrees." ECF 198-3 at 63. More importantly, Norris does not profess to compare how these other companies internally managed their locators, nor does she rely on her benchmarking analysis to draw any insights about how Allergan used its Locator to allegedly induce surgeons. To the contrary, Norris merely offers her analysis to demonstrate that Allergan's Locator visibly "functioned in a manner consistent with broader industry practices."[3] *Id.* Relator's arguments faulting Norris's reliance on publicly available information and lack of "personal knowledge," ECF 198 at 19, about how the other companies ran their locators are questions that affect the weight and credibility of her benchmarking analysis, not its admissibility, *see Bresler*, 855 F.3d at 195.

Finally, Relator challenges Norris's reliance on a 2023 privilege log to render opinions about the effectiveness of Allergan's compliance program. The Court agrees that review of entries on a privilege log is an unreliable method to broadly opine about the effectiveness of a company's compliance program. Here, Norris opined that, based on her review of the privilege log, Allergan's

---

[3] For example, Norris simply compared whether the manufacturer's locator tool (1) had a zip code search or search radius feature; (2) was found on a separate and distinct product branded website as opposed to a company website; and (3) contained various public disclaimers. *Id.* at 64.

11

marketing team frequently communicated with Allergan's compliance, legal, professional education, and regulatory teams, indicating that Allergan's "system as a whole was well controlled and working in a manner consistent with industry standards and trends." ECF 198-3 at 55. However, as Norris acknowledged, she did not review the substance of the logged communications and, therefore, is only left to speculate that certain communications took place or that a certain cadence of communications demonstrated a well-functioning system. *See* ECF 198-6 at 195:22–25 (Dep. Tr. of Katherine Norris). Therefore, the Court will disallow such testimony at trial.[4] Additionally, to the extent Norris relies on substantive communications to extrapolate broad conclusions about Allergan's compliance system, such testimony suffers from the same deficiencies as Hoffman's and will be excluded at trial. Norris will be free, however, to testify about Allergan's compliance program based on her review of Allergan's policies and procedures, health care compliance training, intercompany guidance, and other such documents.

### C. Relator's Motion to Exclude Benjamin Scher

As noted in an earlier memorandum opinion, Relator's damages expert, Christopher Haney, calculated damages to the government from Allergan's Locator by (1) deriving a number of "inducement-tainted Lap-Band devices," and (2) multiplying that number by the estimated Medicare reimbursement value for initial operations and reoperations. *See* ECF 297. Allergan offered Benjamin Scher to rebut Haney's opinions, particularly as to how Haney derived his number of "inducement-tainted" LAP-BANDs and Haney's calculation of the appropriate amount

---

[4] Furthermore, if Allergan wishes to offer this portion of Norris's testimony just for the point about the frequency of communications at Allergan, the Court finds that point moot because, as Allergan explained, Norris assessed the frequency of communications "to evaluate and rebut Ms. Hoffman's assertions regarding the lack of such communication." ECF 230 at 13. Because the Court has excluded Hoffman's testimony, this and any other rebuttal opinions offered by Norris are now moot.

of damages per claim. *See* ECF 198-4 at 26, 51. As rebuttal to the first portion of Haney's testimony, Scher's opinions will be excluded as moot, because this Court has excluded Haney's opinions regarding the number of "tainted procedures" as violative of the causation standards that apply in this case. *See* ECF 297. Scher's independent opinions (*i.e.*, those untethered to Haney) about the impact of the alleged kickback on surgeon decision-making, however, may be offered at trial assuming they meet the applicable causation standards.[5] For example, Scher opines that the Locator could not have influenced surgeons if surgeons did not know they were on the Locator or if surgeons were unaware of listing criteria. ECF 198-4 at 28–29. Because these opinions align with the causation standards that govern this case, the Court will permit them. But to the extent any of Scher's opinions do not align with the causation standards set by this Court, Relator will be free to challenge them in motions *in limine* or at trial.[6]

### IV.   CONCLUSION

For the reasons set forth above, Allergan's Motion to Exclude Allison K. Hoffman, ECF 205, is GRANTED and Relator's Motion *Daubert* Motion to Exclude / Strike Expert Testimony, ECF 197, as to Katherine Norris and Benjamin Scher is GRANTED IN PART and DENIED IN PART. A separate order follows.

Dated: May 28, 2024                                         /s/
                                                                    Stephanie A. Gallagher
                                                                    United States District Judge

---

[5] As Allergan represented during the April 5, 2024, hearing, Scher's opinions on these points can be offered without rebutting or responding to the opinions of Dr. Ian Larkin. ECF 334 at 6:18–7:3. (Apr. 5, 2024, Hearing Tr.). The Court therefore denies as moot Relator's timeliness argument as to Scher's rebuttal testimony.

[6] Relator did not challenge Scher's opinions as to the second, non-excluded portion of Haney's testimony. *See* ECF 334 at 8:6–11 (Apr. 5, 2024, Hearing Tr.).

13