## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **UNITED STATES OF AMERICA,** *et al.,* | * | |
| *ex rel.* **MATTHEW A. FITZER, M.D.,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civil Case No. 1:17-cv-00668-SAG** |
| | * | |
| **ALLERGAN, INC.,** *et al.* | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

In this False Claims Act ("FCA") suit, Relator Matthew A. Fitzer ("Relator") alleges that Defendant Allergan, Inc. ("Allergan") conducted an unlawful kickback scheme by maintaining a surgeon locator on the website for its LAP-BAND product. ECF 1. On May 15, 2024, the Court denied Allergan's motion to dismiss under the FCA's public disclosure bar (the "Opinion"). ECF 344. Allergan has moved for reconsideration of this Court's Opinion and Order. ECF 350. The motion is fully briefed, *see* ECF 357, 360, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, the Court DENIES Allergan's motion for reconsideration.

### I.   RELEVANT BACKGROUND

The undisputed facts in this case are set forth in detail in the Court's prior Opinion and will not be fully reiterated herein. In relevant part, Allergan maintained a "Surgeon Locator" on its public-facing website, Lapband.com, which allowed potential patients to view surgeons capable of performing LAP-BAND surgeries in specific geographic areas. In 2007, Allergan added icons beside some surgeon listings to "recognize experience and expertise or recognize [surgeons'] commitment to patient care." ECF 210-28. The website also provided the criteria for receiving an

icon: an "Experience" icon signified that a surgeon completed at least 75 LAP-BAND procedures the prior year; the "Out of Towner" icon denoted surgeons willing to provide aftercare to patients of other surgeons who happened to be in their area; the "Faculty Member" icon appeared next to those surgeons who trained and qualified others; and the "LAP-BAND TOTAL CARE" icon designated surgeons who completed the Allergan Total Care training program. ECF 210-30; ECF 210-31; ECF 210-32; ECF 210-33. The record demonstrated that Allergan removed the Experience and Faculty Member icons from the Locator in or around June, 2010. ECF 211-19.

Relator is a bariatric surgeon who appeared on Allergan's Locator in early 2007. ECF 214-6 at 155:22–156:2 (Dep. Tr. of Matthew A. Fitzer). Around February, 2012, Relator noticed he was no longer on the Locator and contacted Allergan to be relisted. *Id*. at 156:23–157:12, 167:6–10. In March, 2013, Relator learned that he had been removed again and contacted Allergan to reinstate him on the Locator. *Id.* at 170:19–22; ECF 190-11. During a conversation with an Allergan representative, Jeff Stitely, Relator learned that Allergan had begun excluding physicians from the Locator who had not performed 40 LAP-BAND surgeries in the last year. *See* ECF 190-10.

On August 13, 2013, Relator "voluntarily inform[ed] the Government of the United States of . . . Allergan's violations of the Federal False Claims Act." ECF 326 at 3. Specifically, Relator's disclosures to the government alleged that Allergan "condition[ed] referral privileges" on Lapband.com to surgeons who met the 40 LAP-BAND numerical threshold. *Id.* Relator referred to his personal experience with the Locator, including his removal and his communications with Allergan requesting reinstatement. *See id.* at 4–5. Relator also provided information about Medicare, Medicaid, and other government insurance coverage of LAP-BAND surgeries, noting

the "significant costs to the United States and the [other] States for covering LAP-BAND implant procedures." *Id.* at 13.

Relator then filed his Complaint on November 26, 2013. ECF 1. After the government declined to intervene, ECF 48, the case proceeded through a series of successful efforts by Allergan to dismiss the action. The Court dismissed Relator's Second and Third Amended Complaints for failing to adequately plead violations of the FCA, *see* ECF 91, 118, but eventually allowed Relator to proceed forward with his Fourth Amended Complaint, *see* ECF 140. Each iteration of Relator's Complaint alleged that Allergan submitted false Medicare claims because it employed its Locator as an unlawful kickback to induce surgeons to prescribe LAP-BANDs.

On November 10, 2023, after discovery closed, Allergan moved to dismiss the action under the FCA's public disclosure bar. ECF 210. Relevant to this pending motion, Allergan asserted that this Court lacked subject matter jurisdiction over the action because the "core elements" of Relator's pre-FCA amendment allegations[1] appeared on public-facing websites, including Lapband.com, and Relator based his action "at least partly" on these public disclosures. ECF 210-1 at 32, 37 (internal quotation marks and citations omitted).

Following a hearing on the matter, Relator's submission of his pre-filing disclosures, supplemental briefing, and careful consideration, this Court determined that it had jurisdiction over this action because Relator did not base his pre-2010 claims upon any qualifying public disclosure.

---

[1] As the Court's Opinion explained, Congress significantly amended the FCA and its public disclosure bar on March 23, 2010. *See* ECF 344 at 7. Prior to that date, the FCA divested courts of jurisdiction over an action "based upon the public disclosure of allegations or transactions" in certain qualifying channels unless the relator was an original source of the information. *Id.* (quoting 31 U.S.C. § 3730(e)(4)(A) (2009)). After March 23, 2010, the public disclosure bar is no longer jurisdictional, but can operate to dismiss actions if "substantially the same allegations or transactions were publicly disclosed." *Id.* at 6–7 (citing § 3730(e)(4)(A) (2010)).

ECF 344 at 15–16; *see United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1348 (4th Cir. 1994). The Court's determination focused on Relator's theory that, between 2007 and mid-2010, Allergan engaged in unlawful kickbacks by using icons on the Locator to reward surgeons who prescribed LAP-BANDs with favorable positioning on the Locator. *See* ECF 191 at 14–17. But, as the Court observed, Relator never pleaded this specific theory of fraud, and first raised it on summary judgment after learning in discovery that Allergan used the icons on Lapband.com from 2007 until mid-2010. ECF 344 at 15–16. Therefore, the Court determined that Relator could not have "actually derived" his icon theory from any of the qualifying public disclosures because he did not know icons existed until sometime in 2022 or 2023, when this case was in discovery.[2] *Id.* at 17. Accordingly, the Court did not find the pre-amendment public disclosure bar applicable to Relator's pre-amendment theory of fraud. *See United States ex rel. Fadlalla v. DynCorp. Int'l LLC*, 402 F. Supp. 3d 162, 181 (D. Md. 2019).

Allergan then filed the instant motion for reconsideration under Rule 54(b), seeking review of the Court's Opinion.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 54(b) provides that "any order or other decision" that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time" before entry of a final judgment. *See also Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1469–70

---

[2] With respect to Relator's post-amendment allegations, the Court determined that a genuine issue of material fact existed regarding the publication of numerical quotas for inclusion on the Locator on Lapband.com, and that a jury would have to determine that factual question before the Court could analyze other facets of the post-amendment public disclosure bar. *See* ECF 344 at 19–22. Allergan does not contest this aspect of the Court's Opinion.

(4th Cir. 1991) (approving the trial court's reference to Rule 54(b) in reconsidering its ruling on the defendant's Rule 12(b)(6) motion to dismiss); *Lynn v. Monarch Recovery Mgmt, Inc.*, 953 F. Supp. 2d 612, 618 (D. Md. 2013) ("Motions for reconsideration of an interlocutory order are governed by Federal Rule of Civil Procedure 54(b) . . . ."). In this Court, motions for reconsideration must be filed within fourteen days after the Court enters the order. Loc. R. 105.10.

While the Fourth Circuit has not clarified the precise standard applicable to motions for reconsideration, *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 449 (D. Md. 2015), it has stated that motions for reconsideration "are not subject to the strict standards applicable to motions for reconsideration of a final judgment" under Rules 59(e) and 60(b), *Carrero v. Farrelly*, 310 F. Supp. 3d 581, 584 (D. Md. 2018) (emphasis omitted) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003)); *see Fayetteville Invs.*, 936 F.2d at 1470 (expressing "vigorous[] disagree[ment]" with a trial court's use of a Rule 60(b) standard in reconsidering its previous order on a Rule 12(b)(6) motion). However, courts in this District frequently look to the standards used to adjudicate Rule 59(e) and 60(b) motions for guidance when considering Rule 54(b) motions for reconsideration. *Carrero*, 310 F. Supp. 3d at 584; *Butler*, 307 F.R.D. at 449; *Cohens v. Md. Dep't of Human Res.*, 933 F. Supp. 2d 735, 741 (D. Md. 2013); *see also Fayetteville Invs.*, 936 F.2d at 1470 (positively discussing a district court's reference, but not strict adherence, to the Rule 60(b) standards in reconsidering its prior ruling (citing *Gridley v. Cleveland Pneumatic Co.*, 127 F.R.D. 102 (M.D. Pa. 1989))).

Motions to amend final judgments under Rule 59(e) may only be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). Further, Federal Rule of Civil Procedure 60(b)

explicitly provides that a court may only afford a party relief from a final judgment if one of the following is present: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud or misconduct by the opposing party; (4) voidness; (5) satisfaction; or (6) any other reason that justifies relief. In light of this guidance, "[m]ost courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions." *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 480–81 (D. Md. 2013) (citation omitted); *see also id.* at 481 ("Courts will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." (citation omitted)).

For a previous judgment to be "clear error," the court's decision must be "dead wrong." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)). Indeed, the Fourth Circuit in *TFWS* used even stronger language in describing the standard for clear error: the prior judgment cannot be "just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Id.* (quoting *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, 65 F.3d 166 (Table), 1995 WL 520978, at *5 n.6 (4th Cir. Sept. 5, 1995)). As such, motions for reconsideration are "an extraordinary remedy which should be used sparingly." *Jackson v. Sprint/United Mgmt. Co.*, 633 F. Supp. 3d 741, 746 (D. Md. 2022) (quoting *TFWS, Inc.*, 572 F.3d at 194).

## III.   DISCUSSION

Allergan argues this Court committed two clear errors in concluding that Relator's pre-amendment claims were not "based upon" qualifying public disclosures. First, Allergan argues

that the Court failed to consider whether Relator "even partly" based his claims on public reports and data from the Centers for Medicare & Medicaid Services ("CMS") about federal reimbursement for LAP-BAND procedures. Second, Allergan argues that the Court "allowed" Relator to escape the public disclosure bar by evaluating his new icon theory rather than "the first pleading" in which Relator "allege[d] a particular theory of fraud." ECF 350-1 at 7–8. Neither argument reveals clear error.

### A. Fraud Claims Based on CMS Materials

Allergan first contends that Fourth Circuit precedent required the Court to consider Relator's reliance on public information about Medicare reimbursements for LAP-BAND procedures and conclude that Relator at least "partly" derived his FCA suit from qualifying public disclosures. According to Allergan, Relator derived his knowledge that Medicare covered LAP-BAND procedures from public information, that knowledge played a "vital part" in his FCA case, and therefore, Relator "partly" based his case on the public information, necessitating dismissal under the Fourth Circuit's interpretation of the pre-amendment public disclosure bar. *Id.* at 6.

Allergan's arguments fail to reveal the clear error. While it is true that the Fourth Circuit applies the pre-amendment public disclosure bar "if a relator's claim is 'even partly' derived from prior public disclosures," *United States ex rel. May v. Purdue Pharma L.P.*, 811 F.3d 636, 640 (4th Cir. 2016) (*May II*) (citation omitted), Allergan has pointed the Court to no case——controlling or otherwise——where a relator's reliance on public information about government payments under

Medicare (or any federal program for that matter) sufficed to trigger the public disclosure bar.[3] Rather, Fourth Circuit case law is sufficiently clear that a relator must actually derive his "knowledge of *the fraud*" from public disclosures, not simply knowledge of the mechanisms by which a defendant could defraud the government. *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 917 (4th Cir. 2013) (*May I*) (emphasis added); *see United States ex rel. Beauchamp v. Academi Training Ctr.*, 816 F.3d 37, 39 (4th Cir. 2016) ("[T]he FCA also seeks to prevent parasitic lawsuits based on previously disclosed *fraud*." (emphasis added)); *id.* at 43 (noting that the public disclosure bar aims to prevent lawsuits where a relator "attempts to free-ride by merely reiterating previously disclosed *fraudulent acts*" (emphasis added)). The mere fact that Medicare made some payments for gastric banding surgeries does not reveal fraud.

As Allergan admits, its reading of the Fourth Circuit's "even partly" language would require this Court to dismiss an FCA action when a relator "learned **any** information he relied upon for his pre-amendment FCA claims from **any** qualifying public disclosure." ECF 350-1 at 4 (emphases in original). But the Fourth Circuit has never applied such a broad interpretation in any case, and this Court strains to see how that standard would comport with the statute's intended "balance between empowering the public to expose fraud . . . and preventing parasitic actions." *May II*, 811 F.3d at 642 (internal quotation marks and citation omitted). Applied literally, Allergan's proposed standard could trigger the public disclosure bar for nearly all pre-amendment FCA actions that rely on any public information about federal programs and benefits, not just

---

[3] The parties quibble over the extent of Relator's reliance on qualifying CMS public disclosures, with Relator characterizing his descriptions of CMS coverage for bariatric surgery as "background information," in light of his own knowledge that "that the implantation of the LAP-BAND was a covered procedure," ECF 357 at 8, and Allergan responding that this is a "self-serving assertion" that lacks "substantial supporting evidence," ECF 360 at 3. For purposes of this motion, the Court assumes, without deciding, that Relator relied on at least some CMS public information.

Medicare.[4] Because no binding authority supports such a view, the Court concludes that there is no clear error here.

### B. The Pre-Amendment Public Disclosure Bar and Relator's Pre-Amendment Claims

Allergan also contends that the Court clearly erred by focusing on Relator's un-pleaded icon theory instead of Relator's first pleading where he "broadly alleges that Allergan used all facets of its surgeon locator to illegally induce LAP-BAND sales." ECF 350-1 at 8. Relying on the Supreme Court's ruling in *Rockwell International Corp. v. United States*, 549 U.S. 457, 474 (2007), followed by the Fourth Circuit's decision in *Beauchamp*, 816 F.3d 37, 46 (4th Cir. 2016), Allergan reasons that the Court must consider that the icons were part of the broader "surgeon locator scheme" Relator initially pleaded and ultimately find that Relator relied on qualifying public disclosures, ECF 360 at 8; *see* ECF 344 at 13–15 (finding that Lapband.com and the Locator publicly disclosed the essential elements of Relator's pre-2010 case).

---

[4] Allergan asserts that this concern is unfounded because (1) "relators may have personal, preexisting knowledge of federal coverage and/or claims actually submitted to Medicare that does not actually derive from a public disclosure," and (2) "the original source analysis would still provide an opportunity for a relator to proceed if he were truly qualified to do so." ECF 360 at 6 n.3 (emphasis omitted). Assuming *arguendo* that Allergan could be correct on both points, in nearly every case Allergan cites, the court examined a relator's knowledge of fraudulent conduct, not a relator's knowledge of federal reimbursement programs or practices generally. *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 350–51 (4th Cir. 2009); *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 275 (4th Cir. 2014); *United States ex rel. Fadlalla v. DynCorp. Int'l LLC*, 402 F. Supp. 3d 162, 183 (D. Md. 2019); *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 553 (10th Cir. 1992). The one potential exception, *Seikel v. Alvarez*, considered a relator's reliance on publicly available Paycheck Protection Program ("PPP") loan status information, but even that non-binding case failed to exclusively consider the PPP materials in determining whether the relator based his action on qualifying public disclosures. *See* Civ. No. 1:23-cv-01, 2024 WL 1315869, at *4 (N.D. W. Va. Mar. 27, 2024).

This argument similarly fails to meet the standard for clear error.[5] Allergan is correct that *Rockwell* and *Beauchamp* stand for the proposition that a public disclosure bar analysis should be "on the basis of the relevant fraud alleged," *Beauchamp*, 816 F.3d at 45, but that does not neatly resolve the issues here. In *Rockwell*, the Supreme Court located the relevant fraud in that relator's final pretrial order because the relator asserted a "fundamentally different fraudulent scheme" than that he initially pleaded and subsequently abandoned through the course of the litigation. 549 U.S. at 473; *see also id.* at 474 (noting that a final pretrial order supersedes all prior pleadings and controls the subsequent course of the action (quoting FED. R. CIV. P. 16(e))). In so doing, the Court dismissed the idea that a relator could use his original source status over his abandoned fraud theory to maintain jurisdiction "in gross" over all subsequent claims of which the relator was not an original source. *Id.* at 476. Several years later, the Fourth Circuit in *Beauchamp* distinguished *Rockwell* and evaluated "the relevant fraud claim" from that relator's first amended complaint, rather than his last pleading, because the former was "the first pleading to particularly allege the relevant fraud," while the latter "merely added further detail" about that fraud claim. 816 F.3d at 45–46. The *Beauchamp* court then determined that a news article about the fraud did not trigger the public disclosure bar because that article was published more than a year after the first amended complaint. *Id.* at 46.

---

[5] Allergan also asserts that because the pre-amendment public disclosure bar implicates the Court's subject matter jurisdiction to hear this case, reconsideration "is particularly appropriate." ECF 350-1 at 3 (citing *South Carolina v. United States*, 232 F. Supp. 3d 785, 793 (D.S.C. 2017)). Even recognizing the jurisdictional implications, however, the Court sees no new evidence, argument, or authority that demonstrate clear error. *See South Carolina*, 232 F. Supp. 3d at 793–94 ("[E]ven when subject matter jurisdiction is at issue, a Rule 54(b) motion for reconsideration is assessed under the same standards."); *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 516 (4th Cir. 2003) (noting that the district court should have reconsidered a decision affecting subject matter jurisdiction where it was presented with evidence that it did not previously consider).

There are at least two reasons why the holdings in *Rockwell* and *Beauchamp* fail to reveal clear error in this Court's Opinion. First, as Allergan recognizes, "there is no such pleading or pretrial order that allows for an assessment of what Relator is alleging and how that derives from the qualifying public disclosures." ECF 350-1 at 8. That issue captures what the Court believes to be a fundamental problem with its ability to assess the public disclosure bar against Relator's pre-2010 case. Unlike the relators in *Rockwell* and *Beauchamp*, Relator here did not supersede or amend his Complaint to account for his new icon theory, leaving the Court with neither precedent nor guidance for how *qui tam* suits implicate or avoid the pre-2010 jurisdictional public disclosure bar when a relator introduces a more particularized theory of fraud on summary judgment. For that reason alone, the Court's decision to analyze Relator's new icon theory is not clear error.

Second, even if the Court were to look at Relator's first pleading in which he particularly alleged the broader Locator scheme, it would still find that Relator did not "actually derive" his pre-2010 case from any public disclosures. In his Fourth Amended Complaint ("FAC"), Relator alleged an illegal kickback scheme "based on a usage quota" of the LAP-BAND——specifically, a 40 LAP-BAND yearly requirement to receive "valuable advertising services at no cost" via a listing on the Locator. ECF 127 ¶¶ 2, 16. Relator referenced his own experience of removal in March, 2013, because he did not meet the quota, *id.* ¶¶ 227, 236, and "subsequently learned of other bariatric surgeons" who encountered the same, *id.* ¶ 270. The rest of the FAC expounds upon this factual premise and details how, in Relator's view, Allergan's quota system ultimately violated the FCA.

Though the Court credits Allergan's point that (as Relator admits) the icon theory "was one component" of Allergan's "overall locator kickback scheme," ECF 336 at 12–13 n.9, the record in this case simply cannot support a finding that Relator "actually derived" his knowledge

about Allergan's *pre-2010* fraudulent conduct from qualifying public disclosures. In fact, the FAC alleges no pre-2010 fraud at all. It only mentions that in 2007, Allergan asked Relator to complete a form to obtain his Locator listing, but this is not a kickback or allegation of fraud. ECF 127 ¶ 163. And Relator learned in discovery that the 40 LAP-BAND requirement he complained of did not take effect until well after 2010. *See* ECF 191 at 25. Thus, the record is adequately clear that Relator actually derived his pre-2010 case from information produced in discovery and did not "simply feed off of previous disclosures of government fraud." *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1347 (4th Cir. 1994); *see* ECF 191 at 7 ("[D]iscovery has revealed this illegal kickback scheme to be extensive in breadth and scope. From the early days of Allergan's ownership over the LAP-BAND Allergan sought to . . . reward surgeons . . . with special perks, including Locator icons and accompanying preferential ratings, based on volume-based criteria."); *id.* at 14–17 (citing various portions of the record developed in discovery regarding Allergan's use of icons).

Ultimately, the bifurcation of Relator's case into pre-2010 and post-2010 conduct (necessitated by the FCA amendments), together with the way this case has progressed, has made it impractical to cleanly apply the pre-amendment public disclosure bar to the corresponding portion of Relator's case. With no controlling authority or guideposts that can govern such a unique and messy situation, Allergan fails to convince this Court that its careful analysis was so "wrong with the force of a five-week-old, unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009). Accordingly, Rule 54(b) relief is not appropriate.

## IV.   CONCLUSION

For the reasons stated above, Allergan's Motion for Reconsideration of the Court's Ruling on the Pre-Amendment Public Disclosure Bar, ECF 350, is denied. A separate order follows.


Dated: July 9, 2024                                        _____/s/_____
                                                                              Stephanie A. Gallagher
                                                                              United States District Judge